IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Betty Barlow,<br>    Plaintiff | )<br>)<br>)   Case No 11-473 |
| v. | )<br>) |
| Chase Home Finance, LLC<br>    Defendant. | )   JURY TRIAL DEMANDED<br>)<br>) |

## COMPLAINT

Comes now the Plaintiff, Betty J. Barlow, and files her complaint as follows:

## THE PARTIES

1. Plaintiff is a resident of Baldwin County, Alabama and is over the age of nineteen (19) years.

2. Defendant Chase Home Finance, LLC., (hereinafter "Chase") is a foreign corporation doing business in Baldwin County, Alabama.

## JURISDICTION AND VENUE

3. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331. Plaintiff also asserts various state law tort claims, with an amount in controversy exceeding $75,000, arising from the same set of operative facts as to which this Court has jurisdiction pursuant to 28 U.S.C. and § 1332 and § 1367.

4. Venue is proper in this District because the wrongdoing complained of occurred in Baldwin County, Alabama, the plaintiff resides in Baldwin County, Chase is conducting business in Baldwin County and the subject real property is located in Baldwin County, Alabama.

## FACTUAL ALLEGATIONS

5. Mrs. Betty J. Barlow along with her husband Wilbur O. Barlow (deceased) owned a home located at 31853 Grafton Road, Lillian, Baldwin County, Alabama.

6. The Barlows lived in the home and it was their principal residence.

7. The Barlows obtained a mortgage loan, in the amount of $96,700.00, from J.P. Morgan Chase Bank, NA on their home on February 15, 2006. The Barlows timely made all their mortgage payments until the home was destroyed by fire during the month of May, 2010.

8. On or about May 8, 2010 the home burned and was considered a total loss by the insurer, Alpha Mutual Insurance Company. At the time of the fire the home was still subject to the mortgage which was being serviced by Chase.

9. The Barlows timely made the May, 2010 payment.

10. As part of working their fire insurance claim, an Alfa insurance adjuster requested a payoff balance from Chase. Chase failed and refused to give the adjuster a payoff balance even though the Barlows had authorized Chase to do so.

11. The Barlows, at various times throughout the, presently fourteen month long, ordeal with Chase, requested a payoff balance and/or their agents and attorneys requested such payoff balance, in writing.

12. The Barlows, at various times throughout the ordeal, notified Chase that their account was in error and/or their agents and attorneys notified Chase that the account is in error, in writing. These notices to Chase included a statements of the reasons that the account was in error and provided sufficient detail to Chase regarding other information sought by the Barlows.

13.     At the time of the fire the Barlows owed approximately $89,000.00 on the home. Immediately after the fire, on or about May 10, 2010, Mr. and Mrs. Barlow requested a payoff balance from Chase. Chase had refused to give the payoff amount to their adjuster. One or more of these payoff requests were made within the 12 months next preceding the filing of this complaint.

14.     Employees from Chase instructed the Barlows not the make the June 2010 payment.

15.     In July, however, Chase began calling and harassing the Barlows. It was not uncommon for Chase to call the Barlows five or six times a day. These calls would come from different Chase divisions and locations. The Barlows instructed Chase not to call but Chase continued to call numerous times a day.

16.     Chase did not reply to the Barlows' first request for a payoff until July 21, 2010 stating that the payoff was $90,928.88.

17.     Upon receipt of the payoff amount the Barlows immediately sent Chase a check from their insurance company in the amount of $91,167.74.

18.     Even though the Barlows had tendered a check sufficient to pay off their mortgage, Chase sent them a letter, dated July 28, 2010, threatening to accelerate their loan, foreclose, stating that their account was in default and demanding payment.

19.     Despite the fact that the check was drawn on the insurance company's account, on September 2, 2010, Chase returned the check and demanded certified funds.

20.     Desperate to end Chase's harassment, Mrs. Barlow attempted to pay off Chase using Chase's online payment system and the payment was refused.

21. Within a few days, on or about September 1, 2010, the Barlows sent Chase a cashier's check in the amount of $91,167.44, as she had been instructed to do by employees of Chase.

22. Chase, instead of applying the check to the Barlows' account, placed the funds in "suspense," and continued to call and harass Mr. and Mrs. Barlow demanding payments and threatening foreclosure on the property.

23. Each time Chase called the Barlows would explain that house had burned and that they had tendered certified funds, pursuant to Chase's instructions, sufficient to pay off the mortgage.

24. On or about September 23, 2010, the Barlows original lender, J.P. Morgan Chase Bank, caused an assignment to be recorded assigning the mortgage and note related to the Barlows' property to the defendant, Chase Home Finance LLC.

25. At the time of this assignment Chase considered the account to be in default.

26. September 24, 2010 Chase caused the Sirote law firm to start foreclosure proceedings on the property at issue. Sirote sent a notice of acceleration to the Barlows demanding that pay $92,559.22 and stating that unless Barlows sent those funds a foreclosure sale was going to be held on October 29, 2010. Foreclosure notices were ran in local newspapers during the month of October.

27. Alarmed, the Barlows called Sirote to discuss the situation and the sale was postponed.

28. The running of the foreclosure notice in the local newspaper caused the Barlows great embarrassment and humiliation. Several of the Barlows' family members and friends called them asking why they were not able to pay their bills.

29. Chase also began to report to credit bureaus that the plaintiff's mortgage was past due and in foreclosure. The Credit reporting by Chase caused all or most of Mrs. Barlow's credit card accounts to be closed by the credit grantors.

30. Late in September or early October 2010 the Barlows received a letter from Chase informing them, for the first time, that they needed to sign an authorization allowing Chase to use the insurance finds to pay off the mortgage. Upon receipt, the Barlows executed the authorization and had it delivered to Chase, by Federal Express on October 4, 2010.

31. After sending the payoff authorization the Barlows thought their ordeal with Chase was over, Chase, however, continued to call and harass them several times a day.

32. Although, Chase had received the payoff authorization and was holding the payoff funds, it had the Sirote reschedule the December 3, 2010 foreclosure sale date for January 7, 2011.

33. Mr. Barlow passed away on December 9, 2010.

34. In late January or early February Mrs. Barlow hired a lawyer to help her deal with Chase.

35. On January 7, 2011 Mrs. Barlow received a letter from the Sirote firm informing her that the sale of her former home place had been continued until February 18, 2011.

36. Mrs. Barlow's lawyer, Oliver Latour, called Sirote on, February 8, 2011, and spoke with Coleen McCullough, a member of the Sirote law firm, to discuss Mrs. Barlow's situation. He informed Ms. McCullough, and through her Chase, that he was representing Mrs. Barlow regarding her dispute with Chase.

37. After this discussion, the February 18, 2011 foreclosure sale was canceled. Mr. Latour, however continued his representation of Mrs. Barlow in an effort convince Chase that it should credit the funds that it already had to Mrs. Barlow's account and leave her alone.

38. Chase has refused to leave Mrs. Barlow alone. Instead Chase has continued to contact Mrs. Barlow directly, both by telephone and in writing, with actual knowledge that she is represented by a lawyer.

39. Chase contacted her in writing, at least, on March 10, 2011, July 26, 2011 and on July 21, 2011. Chase also sent Mrs. Barlow a notice that it had force-placed insurance on the property, which is now only a vacant lot, at a cost of $2,317.00.

40. As late as the last week of July 2011 or the first week of August. Chase called and wrote Mrs. Barlow inquiring about "damage to the house."

## COUNT I
## WANTONNESS

41. The plaintiff realleges all prior paragraphs as if set out here in full.

42. The defendant engaged in wanton conduct in that:

   a. It instituted procedures which were designed to cause the plaintiff's home loan to be declared in default including failing to apply the payoff received from Alfa to the balance of the mortgage as required by terms of the mortgage and in conformity with industry and regulatory standards

        including, 12 C.F.R. § 226.36(c)(1), Regulation AB and the uniform standards and accounting principles of the Mortgage Bankers' Association.

    b. This was done for the purpose of imposing fees and charges to the account which could then be claimed from the plaintiff.

    c. This conduct was wanton in that the defendant knew or should have known that by manufacturing a default and imposing bogus or illegal fees against the borrowers that injury would result to the mortgagors in the form of payment of illegal or unauthorized fees or in the loss of the mortgagors' property through foreclosure.

43. The acts of the defendant were oppressive, malicious and intentional and done with full knowledge that the plaintiff would suffer harm as a result.

44. As a proximate consequence of these actions, the plaintiff were caused to suffer harm in that she has suffered embarrassment, humiliation and shame after being denied credit for such simple items as a revolving charge account that occurred because of this conduct, the defendant has sought illegal, unauthorized and bogus fees and charges, the plaintiff has suffered mental anguish and emotional distress as well as the further emotional because of the conduct of the defendant.

    WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award after a trial on the merits of this action.

## COUNT II
## NEGLIGENCE

45. The plaintiff adopts and realleges all prior paragraphs as if set out here in full.

46. The actions of the defendant were negligent in that the defendant failed to properly apply and post payments to the account of the plaintiff when received and in the proper amounts.

47. The defendant wrongfully placed payments into suspense rather than applying the payments to the plaintiff's account.

48. The defendant placed charges onto the account of the plaintiff that were either wrong, illegal, unauthorized or in a wrong amount and failed or refused to correct the account.

49. The defendant reported to credit reporting bureaus that the plaintiff's loan had been foreclosed upon and that the plaintiff was in default, all of which were untrue and known to be false by the defendant.

50. As a proximate result thereof, the plaintiff have been injured and damaged in that she has suffered financial hardship, mental anguish and emotional distress and has been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise incorrect.

51. Plaintiff is entitled to punitive damages because of the gross and reckless nature of Chase's negligence.

WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of compensatory and punitive damages as a jury deems proper and may award.

## COUNT III
## BREACH OF THE MORTGAGE AGREEMENT

52. The Plaintiff adopts and realleges all prior paragraphs as if set out here in full.

53. The plaintiff and the defendant are parties to a contract in the form of the mortgage that exists between them.

54. The defendant has breached the terms of the mortgage agreement by applying account charges that are not reasonable, not necessary, illegal, unauthorized, wrong in nature or amount and or otherwise manufactured by the defendant for the purposes of creating a default.

55. The defendant has breached the mortgage by accepting the payoff of the mortgage but failing and refusing to apply the payoff funds in breach of the payment covenant in the mortgage and the applicable industry and regulatory standards.

56. As a proximate result of this breach, the defendant is liable to the plaintiff for all natural, proximate and consequential damages that are a result of this breach.

WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of damages as a jury deems reasonable and may award.

## COUNT IV
## UNJUST ENRICHMENT

57. The plaintiff adopts and realleges all prior paragraphs as if set out here in full.

58. The actions of the defendant in retaining the payoff funds but not applying them to the mortgage account resulted in extra-contractual unjust enrichment in that the

defendant is able to reap interest on the plaintiff's monies for its own benefit to which the defendant is not entitled under any contract between the parties.

59. As a result of the defendant's conduct, the plaintiff has been injured and damaged and the defendant has been unjustly enriched.

60. The plaintiff claims all damages allowable under law as a result of the defendant's wrongful conduct.

WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award.

## COUNT V
## WRONGFUL FORECLOSURE

61. The plaintiff adopts and realleges all prior paragraphs of the complaint as if set out here in full.

62. The defendant instituted a foreclosure action against the plaintiff despite the fact that the defendant was paid in full for the mortgage loan by Alfa.

63. As detailed in this complaint, the foreclosure was either negligent or wanton, depending on evidence adduced at trial, in that the foreclosure was a direct result of the defendant failing to apply the payoff to the mortgage account and seeking charges and fees that were illegal, improper, unauthorized and in violation of law in such a manner that a default was manufactured or contrived for the purpose of generating fee income to the defendant.

64. As a direct result of these acts, the plaintiff was injured and harmed in that she has suffered financial hardship, mental anguish and emotional distress and has been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise

incorrect, she have been defamed and slandered in the credit reporting of the defendant and have suffered humiliation, shame and embarrassment.

WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of compensatory and punitive damages as a jury deems proper and may award.

## COUNT VI
## SLANDER/DEFAMATION

65. Plaintiff adopts and realleges all prior paragraphs of the complaint as if fully set forth herein.

66. Chase made false, slanderous and defamatory statements about the plaintiff. Specifically, Chase has caused foreclosure notices to be published on local newspapers claiming that Plaintiff was not making her mortgage payments.

67. Chase has, while holding plaintiff's payoff funds, reported false and negative information to credit bureaus.

68. The reporting of this false information while holding Mrs. Barlow's payoff funds constitutes and committing the other acts enumerated above constitutes actual malice.

69. Such untruthful information was disseminated in a negligent, wanton and/or willful manner without regard for the rights of the plaintiff.

70. The plaintiff has been substantially injured as a proximate result of defendant's conduct in that the plaintiff's character and reputation has been adversely affected, the plaintiff has been prevented from obtaining financing (or have been charged excess rates to obtain financing) and has otherwise been caused to suffer economic loss.

WHEREFORE, premises considered, the plaintiff demands judgment against the defendant in such an amount of compensatory and punitive damages as a jury deems proper and may award.

## COUNT VII
## TRUTH IN LENDING ACT

71. Plaintiff adopts and realleges all prior paragraphs of the complaint as if fully set forth herein.

72. Chase was required by 15 U.S.C. § 1639f to promptly credit the Barlows' account with the payoff funds and continues failing to do so.

73. Chase was required by 15 U.S.C. § 1639g send the Barlows an accurate payoff balance within 7 days upon a written request and continues failing to do so.

74. Upon its receipt of an assignment of Mrs. Barlow's mortgage loan Chase became Mrs. Barlow's creditor. See 15 U.S.C. § 1641(g), 12 C.F.R. § 226.39 and the Official Staff Commentary to 12 C.F.R. § 226.39.

75. Within 30 days of the assignment Chase was required by 15 U.S.C. § 1641(g)(1) to disclose the following information:

> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> (D) the location of the place where transfer of ownership of the debt is recorded; and
> (E) any other relevant information regarding the new Creditor.

76. Chase failed to send the Barlows this information as required.

Wherefore Plaintiff demands judgment for:

   a. Actual damages;

    b. Compensatory damages;

    c. Statutory damages of $4000.00 for each violation;

    d. Attorneys' fees; and

    e. Costs of this action.

## COUNT VIII
### REAL ESTATE SETTLEMENT PROCEDURES ACT

77. Plaintiff adopts and realleges all prior paragraphs of the complaint as if fully set forth herein.

78. One or more of the written communications between Plaintiff and Defendant constituted a Qualified Written Request ("QWR") as that term is used in 12 U.S.C. § 2605(e)(1)(b).

79. The mortgage loan at issue was federally related as that term is used by 12 U.S.C. § 2605(a).

80. After receipt of one or more QWRs Chase failed to "make appropriate corrections in the account of" Mrs. Barlow in violation of 12 U.S.C. § 2605(e)(2)(A) and (B).

81. Despite notice and knowledge that Plaintiff was disputing Chase's treatment of her account Chase reported derogatory information to credit bureaus in violation of 12 U.S.C. § 2605(e)(3).

Wherefore, Plaintiff demands judgment for actual damages, statutory damages and attorney's fees.

## COUNT IX
## FAIR DEBT COLLECTION PRACTICES ACT
## ("FDCPA")

82. The Plaintiff adopts and realleges all prior paragraphs as if set out here in full.

83. The debt at issue herein is a consumer debt because it was secured by a mortgage on the plaintiff's principal residence.

84. Chase is a debt collector because it received an assignment of the debt at issue after the debt was considered it to be in default.

85. Chase has violated the FDCPA in at least the following ways by:

   a. Communicating with the plaintiff directly when it knew that she was represented by an attorney;

   b. Engaging in conduct designed to harass, oppress, or abuse the plaintiff in connection with the collection of a debt;

   c. Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass the plaintiff;

   d. Threatening to take nonjudicial action to effect dispossession the plaintiff's property when it had no legal right to do so; and

   e. Failing to make the disclosures required by 15 U.S.C. § 1692g.

Wherefore, Plaintiff demands judgment for actual damages, statutory damages and attorney's fees.

/s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr.
Kenneth J. Riemer
Underwood & Riemer, PC
Attorneys for Plaintiff
21 South Section Street
Fairhope, AL 36532
(251) 990-5558 Telephone
(251) 990-0626 Fax
epunderwood@alalaw.com
kjr@alaconsumer.com

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by struck jury on all claims so triable before the Court.

/s/ Earl P. Underwood, Jr.